UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N⁰ 99-CV-3088 (JFB)
_____

CLINT DAVENPORT,

Plaintiff,

VERSUS

COUNTY OF SUFFOLK,
SUFFOLK COUNTY POLICE DEPARTMENT AND
SUFFOLK COUNTY POLICE OFFICER DANIEL FEIGENBAUM,

Defendants.
_____

MEMORANDUM AND ORDER
February 23, 2007
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Clint Davenport ("Davenport") brings this action against the County of Suffolk ("the County"), the Suffolk County Police Department ("SCPD") and Suffolk County Police Officer Daniel Feigenbaum ("Officer Feigenbaum") (collectively, "defendants"), alleging violations of his civil rights under 42 U.S.C. § 1983 and pendent state law claims arising from his arrest in connection with an automobile stop in Wyandanch, New York, on June 4, 1996, for driving while impaired by drugs and criminal possession of marijuana. On August 14, 2000, defendants moved for summary judgment as to plaintiff's false arrest claims. On February 6, 2001, in a Memorandum and Order issued by the Honorable Joanna Seybert, defendants' motion was (1) granted as to the unlawful arrest claim, as it related to the arrest for driving while under the influence of drugs, and (2) denied as to the unlawful arrest claim, as it related to the arrest for possession of marijuana.

On May 5, 2006, defendants renewed their motion for summary judgment as to the remaining false arrest claim, based upon the United States Supreme Court's subsequent decision in *Devenpeck v. Alford*, 543 U.S. 146 (2004), which clarified the applicable standard for false arrest claims under Section 1983. Defendants also moved for summary judgment as to Davenport's unreasonable search and seizure claim. Davenport cross-moved to amend his complaint to add the following: (1) a malicious prosecution claim; and (2) excessive force and battery claims arising from the alleged banging of his head on the police

car by Officer Feigenbaum during the arrest.

For the reasons stated below, defendants' motion for summary judgment is (1) granted as to the false arrest claim based upon the possession of marijuana charge, and (2) denied as to the unreasonable search and seizure claim. In addition, Davenport's motion to amend his complaint is granted as to the excessive force claim and denied without prejudice as to the malicious prosecution claim.

I. BACKGROUND

A. Facts

Prior to 1996, Davenport was an attorney admitted to practice in the State of New York. (*See* Defendants' Rule 56.1 Statement of Material Facts ("Defs.' 56.1"), ¶ 1.) According to defendants, on June 4, 1996, while operating a 1984 Datsun on Lake Avenue in Wyandanch, New York, Davenport was not wearing a seat belt, was driving the wrong way on the road, failed to stop at a stop sign, and failed to signal before making a right turn onto Straight Path. (*See* Defs.' 56.1, ¶¶ 2-3.) Suffolk County Police Officers Feigenbaum and James Moran ("Moran") pulled over Davenport's car and discovered that Davenport was in possession of a bag of marijuana. (Defs.' 56.1, ¶¶ 4-5.) The officers then arrested Davenport for the following offenses: driving while impaired by drugs, in violation of New York Vehicle and Traffic Law ("VTL") §1192(4); criminal possession of marijuana, in violation of New York Penal Law § 221.05; and violations of VTL §§ 1163, 1229-C & 1172. Davenport was transported to the Suffolk County Police Department's First Precinct, where he refused three requests to permit his blood to be tested for drug intoxication as required by VTL § 1194(2). (Defs.' 56.1, ¶ 5.)

On November 15, 1996, a hearing was held before Administrative Law Judge Siegel ("ALJ Siegel") of the New York State Department of Motor Vehicles, pursuant to VTL § 1194(2)(c). (Defs.' 56.1, ¶ 8.) After a hearing, ALJ Seigel found that the officers had probable cause to arrest Davenport for violating VTL § 1192 and concluded that Davenport had improperly refused to submit to an intoxication test as required under VTL § 1194. (Defs.' 56.1, ¶ 9 & Ex. A.)

On January 24, 1997, Davenport gave a written statement to the Suffolk County Police Department's Internal Affairs Bureau, in which he stated that during his arrest on June 4, 1996, a bag of marijuana was found by the police in his pocket. (Defs.' 56.1, ¶¶ 10-11 & Ex. B.) In addition, on October 25, 1999, Davenport filed a document entitled "Discovery Response" in this action, in which he stated that "a bag of marijuana was removed from [his] pocket" after the officers stopped him. (Defs.' 56.1, ¶ 12 & Ex. C.) According to the felony complaint against plaintiff, the marijuana was not removed from Davenport's pocket; rather, the bag of marijuana fell onto the street when the plaintiff put his hand into his pocket to withdraw his license. (Pl.'s Br., Ex. 1.)

B. Procedural History

Davenport commenced this action on June 1, 1999, alleging unlawful arrest and unlawful search and seizure in violation of his civil rights pursuant to 42 U.S.C. § 1983.[1] Davenport's complaint also appeared to assert pendent state law claims for intentional and/or negligent infliction of emotional distress.

---

[1] On February 6, 2001, Davenport filed an amended complaint.

Specifically, Davenport alleges that, while driving his car on or about June 4, 1996, he was unlawfully pulled over by Officer Feigenbaum. (Amended Complaint ("Am. Compl."), ¶¶ 10-11.) Davenport further alleges that, upon stopping his car, he was "forcibly removed" from his vehicle, "forcibly searched," "arrested," and "forcibly handcuffed and physically placed into the police vehicle" without legal cause or justification. (Am. Compl., ¶¶ 13-15.) According to the complaint, he was thereafter wrongfully "charged [sic] detained, deprived of his liberty against his will, and forcibly imprisoned" at the police precinct for ten hours. (Am. Compl., ¶ 16.) Davenport alleges that, as a result of these violations of his civil rights under Section 1983, he "has been damaged, and has been caused to suffer humiliation, ridicule, disgrace, and embarrassment, and has sustained substantial expense, and significant physical, emotional, and mental anguish, including substantial attorney fee's [sic]." (Am. Compl., ¶ 33.)

On August 14, 2000, defendants moved for summary judgment as to the false arrest claims. In his opposition to that motion, Davenport sought leave to amend his complaint to add claims for malicious prosecution, violations of his right to equal protection, and violations of his right to substantive and procedural due process. On February 6, 2001, Judge Seybert granted the defendants' motion for summary judgment as to the unlawful arrest claim inasmuch as it related to Davenport's arrest for driving while under the influence of drugs, and denied defendants' motion for summary judgment as to the unlawful arrest claim inasmuch as it related to Davenport's arrest for possession of marijuana. Judge Seybert granted Davenport's cross-motion to amend his complaint to add claims under the Equal Protection Clause and the Due Process Clause. Plaintiff's cross-motion to amend his complaint to add a malicious prosecution claim was denied without prejudice,pending termination of Davenport's criminal prosecution.

On February 16, 2006, the case was transferred to the undersigned. On May 5, 2006, defendants renewed their motion for summary judgment to dismiss plaintiff's remaining false arrest claim, based upon the Supreme Court's 2004 decision in *Devenpeck*. Defendants also moved for summary judgment as to Davenport's unreasonable search and seizure claim.[2] On July 5, 2006, Davenport cross-moved to amend his complaint to add malicious prosecution, excessive force and battery claims. Oral argument was held before this Court on February 9, 2007.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the

---

[2] The Second Circuit has noted that "district courts enjoy considerable discretion in entertaining successive dispositive motions." *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) (citations omitted).

light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### III. DISCUSSION

#### A. Claims Arising Under 42 U.S.C. § 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983. For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir.1999) (citation omitted).

#### B. False Arrest

In the February 6, 2001 summary judgment decision, Judge Seybert granted defendants' motion for summary judgment as to plaintiff's claim of false arrest for driving under the influence of drugs based upon ALJ Seigel's determination that probable cause existed to arrest Davenport on that charge. However, Judge Seybert also found that summary judgment as to the false arrest claim arising from the possession of marijuana charge was not warranted because there was no finding of probable cause by ALJ Siegel as to that charge.

Defendants now argue that, since Judge Seybert issued her decision, the Supreme Court has made clear in *Devenpeck v. Alford*, 543 U.S. 146 (2004), that if there is probable cause to arrest on any crime, then no false arrest claim can exist with respect to any other charges brought by the police at the time of arrest. As set forth below, the Court agrees and finds that plaintiff's claim for false arrest must be dismissed, as a matter of law, because the officers had probable cause to arrest Davenport for driving under the influence of drugs.

In New York, the claim colloquially known as "false arrest" is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the Section 1983 context. *See Singer v. Fulton*

*County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest the confinement and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 37 N.Y.2d 451, 456 (N.Y. 1975) (internal citations omitted). The only element in dispute in the instant case is the last element. Defendants argue that the arrest was privileged as a matter of law because it was supported by probable cause. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d. Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (holding that probable cause is a "complete defense to an action for false arrest").

As Judge Seybert properly concluded, probable cause for plaintiff's arrest and detention in the instant case is supported by ALJ Siegel's finding that probable cause existed for the charge of driving under the influence of drugs.[3] *See Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985) (granting summary judgment on false arrest claim where ALJ made probable cause finding as to charge of driving while intoxicated). Contrary to plaintiff's contention, given ALJ Siegel's finding, the presence or absence of probable cause as to the other crime for which he was arrested is legally irrelevant in analyzing the false arrest claim. Instead, a finding of probable cause as a matter of law as to one of the crimes with which Davenport was charged on the day of his arrest justified the seizure of his person and his subsequent detention. Moreover, under *Devenpeck*, it precludes *any* false arrest claim, regardless of whether or not the officers had probable cause to arrest Davenport for possession of marijuana.

In *Devenpeck*, the Supreme Court held that probable cause to arrest need not be based upon the offense invoked by the arresting officer. 543 U.S. at 153-56. In fact, under *Devenpeck*, the offense for which probable cause is established need not be even "closely related" to the offense invoked by the arresting officer. *Id.* Based upon this conclusion, the Supreme Court remanded the case to the Ninth Circuit to determine whether probable cause to arrest existed for the uncharged crimes of impersonating an officer or obstructing justice, despite the fact that the only crime charged at the time of arrest was for tape recording an officer, and that charge was later dismissed because it was not a crime in the State of Washington. *Id.* at 156.

The Second Circuit, in the wake of *Devenpeck*, has made clear that probable cause as to any charge at the time of arrest is sufficient to defeat a false arrest claim as a

---

[3] Davenport continues to argue that he was not provided with a full and fair opportunity to litigate the probable cause issue before ALJ Siegel and seeks to have this Court revisit Judge Seybert's ruling on the preclusive effect of the ALJ's probable cause finding. This Court agrees with Judge Seybert. The ALJ conducted a full hearing, during which Officer Feigenbaum testified and was subjected to lengthy questioning by Davenport, who was an attorney and represented himself in that proceeding. There is no procedural or substantive aspect of that hearing which suggests that Davenport was denied a full and fair opportunity to litigate whether Officer Feigenbaum had probable cause to arrest him. Therefore, Davenport's effort to have this Court reconsider that ruling is denied.

5

matter of law:

> Following *Devenpeck*, we conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge.
>
> \* \* \*
>
> We thus hold, following *Devenpeck*, that a plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest.

*Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *see also DeVito v. Barrant*, No. 03-CV-1927 (DLI) (RLM), 2005 WL 2033722, at \*4 (E.D.N.Y. Aug. 23, 2005) (barring § 1983 false arrest claim where probable cause existed for arrest, as exhibited by plaintiff's conviction, and rejecting plaintiff's argument that false arrest claim could be brought regarding other charges for which he was not convicted). Moreover, although Davenport contends that the arrest was the result of an unlawful stop and search (as discussed *infra*), such an argument cannot revive his defective false arrest claim. *See Townes v City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.").

Accordingly, the Court finds that summary judgment should be granted in favor of defendants with respect to plaintiff's remaining false arrest claim arising from the marijuana possession charge.[4]

C. Unreasonable Search and Seizure

Defendants argue that Davenport cannot recover on an unreasonable search and seizure claim for two reasons. First, defendants argue that there was probable cause to arrest Davenport (as found by ALJ Siegel) and that the search was incident to arrest. Second, defendants, relying on the Second Circuit's decision in *Townes*, contend that, even if the search and seizure exceeded the bounds of a search incident to arrest, Davenport nevertheless cannot recover, because no compensable harm resulted from the discovery of the marijuana. As set forth below, the Court finds these arguments unpersuasive.

Although the ALJ found that there was probable cause to arrest Davenport after the officer pulled him over and discovered the marijuana, the ALJ did not make any findings regarding the lawfulness of the initial stop and search. *See Wallace v. Dillon*, 921 F. Supp. 946, 953 (E.D.N.Y. 1996) (state court determination of issues "actually litigated" in suppression hearing can bar subsequent Section 1983 claims). In particular, the ALJ's finding consisted of the following:

---

[4] To the extent Davenport is also asserting a false imprisonment claim arising from the lack of probable cause to arrest, it is dismissed on the same grounds.

> This hearing, having been closed and I having considered the credible evidence in Mr. Davenport's argument, I find that [Davenport] was arrested for driving while intoxicated and that Police Officer Feigenbaum in fact, had probable cause to effect that arrest.

(State of New York, Dep't of Motor Vehicles, Administrative Adjudication Bureau, Transcript of November 15, 1996 Proceeding, at 90.) Such a finding precludes Davenport, as discussed earlier, from asserting a false arrest claim. However, this finding, which does not specifically address the lawfulness of the initial stop and search, does not preclude plaintiff from arguing that the initial stop of his vehicle was without reasonable suspicion and, therefore, the stop and the alleged subsequent search of his person prior to his arrest violated the Fourth Amendment. Defendants assertion – that any search was incident to arrest and therefore lawful – cannot prevail inasmuch as Davenport challenges the stop and search that took place *prior* to his arrest. Thus, any Fourth Amendment claim relating to (1) whether there was reasonable suspicion for the initial stop, and (2) whether the search of Davenport's person prior to arrest was lawful, survives, notwithstanding the ALJ's determination regarding probable cause to arrest.

Likewise, defendants' reliance on *Townes* to defeat this claim is unavailing. In *Townes*, a plaintiff brought a Section 1983 action in which he alleged Fourth Amendment violations based upon an illegal stop and search of a taxicab, in which he was a passenger, that resulted in the discovery of handguns and led to his arrest, pre-trial detention and conviction. *Townes*, 176 F.3d at 141-42. The Second Circuit held that such claims could not survive a motion to dismiss because the plaintiff did not seek damages based upon the stop and seizure itself, but in fact only sought damages for his resulting conviction and incarceration. *Id.* at 145. The Second Circuit reasoned that an unlawful stop cannot provide the basis for damages for the subsequent conviction and incarceration because "[t]he fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions." *Id.* at 145. The Court further explained:

> [T]here is a gross disconnect between the constitutional violations ([plaintiff's] Fourth Amendment right to be free from unreasonable searches and seizures) and the injury or harm for which [plaintiff] seeks a recovery (his subsequent conviction and incarceration). The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all.

*Id.* at 148. The Court noted that such damages from the prosecution and incarceration potentially could be brought under a malicious prosecution claim, which the plaintiff in *Townes* failed to allege. *Id.* at 149.

There is no question that *Townes* prevents Davenport from recovering damages for his subsequent arrest and prosecution based upon his unreasonable search and seizure claim. However, unlike the plaintiff in *Townes*, Davenport does not limit the damages sought to his arrest and conviction, but also seeks damages from the alleged unreasonable stop and seizure prior to his arrest. The Second Circuit recognized that, if the plaintiff in *Townes* had sought damages from the stop and initial search of his person, such damages would have been available. *Id.* ("[Plaintiff's] only possible damage claim would be limited to the brief invasion of privacy related to the seizure and initial search of his person.").

More specifically, "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy– including (where appropriate) damages for physical injury, property damage, injury to reputation," and related damages. *Id.* at 148. Therefore, such damages are clearly available to Davenport if he can prove that a Fourth Amendment violation of his rights occurred during the initial stop and search of his person prior to arrest. Under Second Circuit law, Davenport is entitled to a trial even if he is only able to recover slight or nominal damages. *Id.* at 146; *see also Gonzalez v. City of Schenectady,* No. 00-CV-0824, 2001 WL 1217224, at *9 (N.D.N.Y. Sept. 17, 2001) (where plaintiff sought damages for alleged invasion of privacy before marijuana discovered, "[w]hether a jury would award compensatory damages for the brief detention suffered by the Plaintiff is . . . a question of fact"). Accordingly, the Court denies summary judgment as to plaintiff's unreasonable search and seizure claim.

### D. Leave to Amend

In his opposition papers, Davenport seeks leave to amend his complaint to add (1) a claim for malicious prosecution for charges of driving under the influence of drugs and marijuana possession; and (2) claims for excessive force and battery based upon the arresting officer banging Davenport's head against the top of the police car during his arrest.

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears *beyond doubt* that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (emphasis added) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)); *accord Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.") (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 9.03 at 9-34 (2d ed. 1986)).

#### 1. Malicious Prosecution

In connection with defendants' August 14, 2000 summary judgment motion, Davenport cross-moved at that time to add a claim of malicious prosecution. Defendants countered that the proposed amendment would be futile because Davenport's criminal case was still pending at that time. As a result, Judge Seybert denied the motion to amend, without prejudice, pending termination of the criminal prosecution. Davenport now renews that motion to amend because the criminal prosecution has concluded with dismissal of both charges. However, as set forth below, the Court cannot determine that the underlying charges were dismissed in a manner that would constitute a "favorable termination" for purposes of a malicious prosecution claim. Therefore, based upon the information supplied by Davenport, any malicious prosecution claim appears to be futile. However, the Court will again deny the motion to amend *without prejudice* to renewal of such motion with

8

additional evidence to show why the Court's conclusion regarding futility is incorrect.

In order to prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must demonstrate that his or her rights were violated under the Fourth Amendment, *see, e.g., Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997), and must also establish the required elements of malicious prosecution under state law, *see, e.g., Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). *See Fulton*, 289 F.3d at 195. "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Fulton*, 289 F.3d at 195; *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).

The ALJ's finding of probable cause on the charge of driving under the influence of drugs is an absolute bar to any malicious prosecution claim as to that charge. However, in contrast to the analysis of false arrest claims, discussed *supra*, the Second Circuit has noted that a finding of probable cause as to one claim does not necessarily absolve liability for malicious prosecution under § 1983 as to other criminal charges which were resolved favorably to plaintiff.[5] *See Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also Posr*, 944 F.2d at 100 (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted").

Therefore, this Court must separately analyze whether there is a legally cognizable claim for malicious prosecution based upon the marijuana possession charge such that leave to amend should be permitted.

As Judge Seybert noted in her February 6, 2001 decision, the underlying criminal charges against Davenport must have been favorably terminated in order for him to bring a viable malicious prosecution claim. In his renewed motion to amend, although Davenport provides no court documentation supporting a favorable termination, he states in an affidavit that the dismissal of both charges against him occurred "under Criminal Procedures Law at section 170.30." (Pl.'s Br., at ¶ 12.)

It is well settled that "[w]here the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, . . . only when its final disposition is such as to indicate the innocence of the accused." *Murphy*, 118 F.3d at 948 (citing *MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (N.Y. 1996)) (additional citations omitted); *see also Russell*, 68 F.3d at 36 ("In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence."). Specifically, although Davenport argues that a dismissal pursuant to N.Y. Crim. Proc. Law § 170.30 is a favorable termination, the Second Circuit has found otherwise.[6] *See, e.g., Breen*

---

[5] Nothing in the Supreme Court's decision in *Devenpeck*, which addressed only false arrest claims, impacts Second Circuit precedent with regard to malicious prosecution claims.

[6] Davenport cites *Allen v. Town of Colonie*, 583 N.Y.S.2d 24 (N.Y. App. Div. 1992) for the proposition that when a question of fact exists as to whether there was a favorable termination, summary judgment is unwarranted. However, *Allen* is distinguishable from the instant case because in *Allen*, it was unclear whether the dismissal had occurred pursuant to N.Y. Crim. Proc. Law 170.40. Here, according to Davenport's allegations, it is clear that the dismissal was under Section 170.30. Although Davenport argues that it

9

*v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (malicious prosecution claim properly dismissed where the "charge subsequently was dismissed for facial insufficiency pursuant to section 170.30 of New York's Criminal Procedure Law"); *see also Ferlito v. City of Oswego*, No. 03-CV-96 (HGM/GHL), 2006 WL 2238939, at * 9-10 (N.D.N.Y. Aug. 4, 2006) (dismissal under § 170.40 was not a favorable termination) (collecting cases); *MacFawn*, 88 N.Y.2d at 860 (explaining that, in dismissing information pursuant to § 170.30, "[t]he court did not reach the merits and the question of plaintiff's guilt or innocence remained unanswered after the court dismissed the information. Accordingly, plaintiff's complaint in the civil action failed to state a cause of action for malicious prosecution and it was properly dismissed").

Therefore, Davenport's proposed inclusion of a malicious prosecution claim, which relies upon a Section 170.30 dismissal to establish the favorable termination element, appears to be futile. Davenport has not identified any aspect of the dismissal that suggests that the final disposition of his case was indicative of his innocence. In the absence of such evidence, his proposed malicious prosecution claim must fail as a matter of law. In an abundance of caution, however, the Court will allow Davenport one more opportunity to renew his motion to amend and to submit any evidence he may have that would support the existence of a favorable disposition of the criminal case under this standard.

2. Excessive Force

---

is unclear under which subsection of Section 170.30 the dismissal was brought, he has failed to show how a favorable termination could result under any subsection of that provision.

Davenport also seeks to add claims for excessive force under Section 1983 and for battery under New York State law. In particular, Davenport asserts that the arresting officer banged his head against the top of the police car during the arrest. For the reasons stated below, on the current record, the Court cannot find that such an amendment would be futile as a matter of law, nor are there other grounds for the Court to deny leave to amend.

A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotations omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis of an excessive force claim involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted).

Although the focus of Davenport's proposed amendment pertains to the alleged banging of his head on the police car during the arrest and he proffers no medical evidence of injury in connection with his motion to amend, the Court cannot find that such a claim is necessarily futile. The Court recognizes that there may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that it cannot rise to a constitutional violation as a matter of law. *See, e.g., Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant where plaintiffs failed to demonstrate that the alleged action by the police officer "was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale"); *Johnson v. Police Officer #17969*, No. 99-CV-3964 (NRB), 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive force claim based on admission that plaintiff resisted arrest and only alleged minor injuries); *cf. Tierney v. Davids*on, 133 F.3d 189, 199 (2d Cir. 1998) (finding qualified immunity existed for excessive force claim under Due Process Clause, where the claim was related to police conduct toward individuals present during execution of a search, because the force used "was de minimis, necessary, appropriate, and benign"); *Griffen v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999) (noting, in addressing excessive force claim under the Eighth Amendment, that "*de minimis* uses of force generally do not suffice to state a constitutional claim"). However, a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.") (citing *Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir. 1987)); *see also Hayes v. New York City Police Dep't*, No. 06-0595-PR, 2007 WL 130332, at *1 (2d Cir. Jan. 16, 2007) (summary order) (citing *Maxwell* and noting that "we have permitted claims to survive summary judgment where the only injury alleged is bruising"); *Robison*, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.") (citations omitted).

In the instant case, Davenport may be able to demonstrate that the officer intentionally hit his head on the car during the arrest, causing an injury to his head, and he could argue that this alleged gratuitous use of force by an officer constituted an objectively unreasonable use of force. *See, e.g., Johnson v. City of New York*, No. 05-CV-2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (denying summary judgment on claim of excessive force during execution of a search and noting that "[w]hile not every push or shove violates the Fourth Amendment, . . . there surely would be no objective need to 'stomp' and 'kick' an individual already under police control") (citations and quotations omitted); *Pierre-Antoine v. City of New York*, No. 04-CV-6987 (GEL), 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (holding that repeatedly striking a subdued individual would constitute an objectively unreasonable use of force under the Fourth Amendment); *Graham v. Springer*, No. 03-CV-6190 (CJS), 2005 WL 775901, at *6 (W.D.N.Y. Apr. 5, 2005) (denying summary judgment on excessive force claim where plaintiff's evidence indicated that he was kicked while lying on the ground in handcuffs); *Jones v. Ford*, No. 00-CV-0934, 2002 WL 1009733, at *4 (M.D.N.C. Feb. 15, 2002) ("If Defendant . . . did in fact kick Plaintiff several times while he was on the

ground handcuffed, such acts could constitute excessive force in violation of the Fourth Amendment.") (citing *Hafner v. Brown*, 983 F.2d 570 (4th Cir. 1992)).

More specifically, in *Maxwell*, the Second Circuit specifically focused on a Section 1983 claim alleging that the police had banged the head of the plaintiff while she was being put into a police car. The district court in *Maxwell* granted summary judgment for the defendants and found, among other things, that plaintiff's claim that she "'allegedly scraped her head when being shoved into the car is not sufficient for any reasonable jury to find excessive force claim in this case – minor scrapes, bumps or bruises potentially could occur, often unintended, during any arrest, and an arresting officer can not be held unremittingly liable for every such incident.'" *Maxwell*, 380 F.3d at 109 (quoting *Maxwell v. City of New York*, 272 F. Supp. 2d 285, 298 (S.D.N.Y. 2003)). However, the Second Circuit reversed the district court and found the alleged conduct and injury sufficient to require the claim to be submitted to the jury. *Id.* at 109-10.

Although Davenport has not alleged or proffered injuries as significant as those in *Maxwell* and referred to his injury as a bump on the head in oral argument, the Court cannot conclude as a matter of law that any claim of this type by Davenport would necessarily be futile such that the Court should deny leave to amend. A jury may consider the lack of serious injury as evidence that the implemented force was not excessive, and may weigh it against Davenport's testimony, but that does not mean that there are no circumstances under which Davenport can prevail. *See Pierre-Antoine*, 2006 WL 1292076, at *5 (noting that although the lack of severe injury may be considered by a jury as evidence that force was not excessive, it did not entitle defendants to judgment as a matter of law); *see Murray v. Williams*, No. 05-CV-9438 (NRB), 2007 WL 430419, at *7 (S.D.N.Y. Feb. 7, 2007) (refusing to find that alleged force was *de minimis* where plaintiff alleged a laceration to his lower lip, a bloody nose, pain and suffering, and mental anguish); *see also Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir.1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury.").

Moreover, the Court has also considered the other factors under Rule 15(a) that might weigh against allowing plaintiff leave to amend to add this claim, including any prejudice to defendants due to plaintiff's failure to make such a motion at an earlier point in the litigation. With respect to this issue, the Court notes that, although Davenport sought only recently to amend his complaint to add this specific claim of excessive force, he did, in fact, refer to this incident in his submission of the "Final Narrative" in April 2000. Therefore, defendants have been aware of this allegation for some time. Moreover, even in his current complaint, Davenport asserts other mistreatment by the defendants, both during and subsequent to his arrest. Under these circumstances, the Court does not find that the defendants will suffer undue prejudice if the Court allows Davenport to amend his complaint to add this claim.

Accordingly, the Court grants Davenport leave to amend his complaint to include a claim of excessive force under Section 1983 and a claim of battery under New York State law, based upon the alleged banging of his

head on the police car during his arrest by the arresting officer.

## IV. CONCLUSION

Based on the foregoing, defendants' motion for summary judgment is GRANTED as to plaintiff's false arrest claim and DENIED as to his claim of unreasonable search and seizure prior to that arrest. Plaintiff's cross-motion for leave to amend is GRANTED as to the excessive force and battery claims and DENIED without prejudice as to the malicious prosecution claim.[7]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 23, 2007
Central Islip, New York

\* \* \*

Plaintiff appears *pro se.* The attorneys for defendants are Arlene S. Zwilling, Esq., and Robert A. Caccese, Esq., Suffolk County Attorney's Office, H. Lee Dennison Building, 5th Floor, P.O. Box 6100, Hauppauge, New York 11788.

---

[7] Davenport also continues to assert Equal Protection and Due Process claims that were not the subject of defendants' motion, as well as pendent state law claims for intentional and/or negligent infliction of emotional distress.